Opinion filed August 25, 2022



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00267-CV

_____

## IN RE COMMITMENT OF DEAN TYRONE TRYON

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CV-55,137**

### O P I N I O N

This is a civil commitment action under the Texas Civil Commitment of Sexually Violent Predators Act (the Act). TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153 (West 2017 & Supp. 2021). After a jury trial, the jury unanimously found, beyond a reasonable doubt, that Appellant, Dean Tyrone Tryon, is a sexually violent predator. The trial court later signed a final judgment and commitment order thereby committing Tryon for involuntary treatment and supervision.

Tryon raises three issues on appeal: (1) the evidence is legally insufficient to support the jury's finding that Tryon suffers from a behavioral abnormality; (2) the

evidence is factually insufficient to support the jury's finding that Tryon suffers from a behavioral abnormality; and (3) under the Texas Supreme Court's recent decision in *In re Commitment of Stoddard*, Chapter 841—the Act—is unconstitutional, both facially and as applied to Tryon. *See In re Commitment of Stoddard*, 619 S.W.3d 665 (Tex. 2020). We affirm.

## I. *Factual Background*

Before the State sought to have Tryon committed as a sexually violent predator, Tryon had previously been convicted of two felony offenses that involved sexual misconduct—sexual assault in 1987 and attempted sexual assault in 2012. For each offense, Tryon was convicted pursuant to a plea bargain for which he was sentenced to seven years' and eight years' imprisonment, respectively, including confinement in a prison psychiatric unit.

At trial, the State presented Dr. Jason Dunham, a forensic psychologist, and Dr. Michael Arambula, a psychiatrist, as expert witnesses. Tryon presented Dr. Marisa Mauro, also a forensic psychologist, as his expert witness. Tryon also testified. As is generally the case, the experts presented conflicting opinions regarding whether Tryon suffered from a behavioral abnormality within the meaning of the Act.

The three experts followed standard methodologies and explained in detail the bases for their opinions. Although the experts' ultimate opinions conflicted, they did agree on several aspects of their evaluations of Tryon. Each expert agreed that Tryon suffers from a severe mental illness that is a contributing factor to his previous sexual misconduct. Dr. Dunham and Dr. Mauro described this mental illness as "schizoaffective disorder," a rare combination of schizophrenia and bipolar mood disorder. Similarly, Dr. Arambula diagnosed Tryon with an unspecified schizophrenia, paranoia, and bipolar illness. The three experts further diagnosed Tryon with an antisocial personality disorder.

2

These experts also concluded that Tryon has borderline intellectual functioning, or an intellectual disability. They agreed that Tryon abused multiple substances in the past but that this substance abuse is currently in remission. They further agreed that he was manic during each of their evaluations of him and that, although Tryon has an extensive history of mental illness and attempts at treatment, he also has a history of noncompliance concerning the use of the medications prescribed for him. Finally, the experts agreed that Tryon has never had, sought, or been offered sex offender treatment.

A. *Dr. Dunham's Testimony*

After detailing his training and experience, Dr. Dunham testified that "behavioral abnormality" is a purely legal term of which he is familiar. Based on his education, training, experience, and methodology, Dr. Dunham opined that Tryon suffers from a behavioral abnormality within the meaning of the Act. Dr. Dunham stated that (1) Tryon has a long history of sexually assaulting women, (2) he has an uncontrollable mental illness that raises his risk of repeated sexually assaultive behavior, (3) he was at a high risk to reoffend when he was last incarcerated, and (4) his risk to reoffend has only increased.

Dr. Dunham concluded that Tryon was sexually deviant; that is, he engages in sexual behavior that is not accepted by society. Unlike most sex offenders, Tryon reoffended after being convicted and imprisoned for a prior sexual offense. Dr. Dunham believes that Tryon's risk of sexually reoffending continues to increase over time as he ages.

Dr. Dunham also diagnosed Tryon with psychopathy, an extreme form of antisocial personality disorder. Some examples of Tryon's antisocial personality disorder include his commission of arson while he was on parole and his acts of masturbation in the presence of female corrections officers and other offenders.

Dr. Dunham found that Tryon has an extensive history of substance abuse, including the use of crack cocaine and alcohol, which can reduce a person's inhibitions. Tryon also has a significant history of hallucinations, delusions, and noncompliance concerning his use of the medications prescribed for him, which causes him to decompensate when he is not taking the medications. Dr. Dunham found that Tryon was psychotic and not taking his medications at the time of his interview. Because of this, Dr. Dunham opined that, during a psychotic break, Tryon will act impulsively and do whatever his desires dictate.

According to Dr. Dunham, Tryon's score on the Static-99R was one, which placed Tryon in an average risk category to reoffend sexually. However, this test does not account for Tryon's mental illness. Dr. Dunham found that Tryon has several concerning dynamic risk factors, namely, that Tryon does not believe that (1) he has a problem, (2) he is a sexual offender, (3) he is noncompliant with his prescribed medications, and (4) he needs sex offender treatment.

Dr. Dunham considered two possible protective factors for Tryon: his advanced age and his institutional adjustment. At the time of Dr. Dunham's evaluation, Tryon was sixty-three years old. His advanced age would typically be a protective factor. However, Tryon's most recent sexual offense while not imprisoned occurred when he was fifty-five years old, an age which would also typically be a protective factor. A year before this evaluation, and while imprisoned, Tryon masturbated onto another inmate; Dr. Dunham considers this conduct to be an additional indication that Tryon's advanced age is not the protective factor that it typically would be in other cases. Although Tryon received minimal disciplinary infractions while institutionalized, which would usually indicate good institutional adjustment, Dr. Dunham noted that Tryon was confined to a specialized psychiatric unit where many of his behaviors were either ignored or excused.

4

Dr. Dunham testified that, in his opinion, Tryon's combination of lower functioning intelligence, mental illness, and history of substance abuse is a formula for him to impulsively do anything without considering the consequences.

B. *Dr. Arambula's Testimony*

Like Dr. Dunham, Dr. Arambula detailed his training and experience and explained the statutory definition of "behavioral abnormality" for the jury. Based on his expertise—his education, training, experience, and methodology—he opined that Tryon suffers from a behavioral abnormality within the meaning of the Act. That abnormality consists of Tryon's sexual deviance, mental illness, substance abuse, and antisocial personality.

Dr. Arambula pointed to Tryon's second sexual offense as an example of Tryon's behavioral abnormality: he gave a woman a ride home, during which everything appeared to be fine, and then he suddenly became intent on raping her, despite not previously displaying any signs of agitation or mental illness. Dr. Arambula stated that Tryon is sexually deviant; that is, he has pathological sexual interests that interfere with his relationships. In addition to his two felony convictions for sexual offenses, Tryon behaved in a sexually inappropriate manner during his imprisonment and confinement in a mental hospital. Further, Tryon sexually offended in his thirties and again in his fifties. According to Dr. Arambula, it is unusual for a man to sexually offend in his fifties.

Dr. Arambula believes that Tryon has both a sexual deviance and an antisocial personality, both of which cause a person to be a high risk to sexually reoffend. Dr. Arambula noted that Tryon has a history of substance abuse, including the use of cocaine, heroin, PCP, and alcohol. He also suffers from hallucinations and exhibits quick mood changes, which are caused by his mania.

During the interview with Dr. Arambula, Tryon was manic and unstable. Dr. Arambula testified that it is extremely uncommon for people with

5

schizoaffective disorder to sexually assault others or to have an antisocial personality disorder, yet Tryon does. Dr. Arambula believes that Tryon's underlying sexual deviance and antisocial personality disorder, which are the two heaviest-weighted risk factors for sexually reoffending, are the cause of Tryon's propensity to sexually reoffend. Although Tryon has an extensive history of prescribed antipsychotic medications and mood stabilizers, he is typically not compliant. According to Dr. Arambula, the medications prescribed for Tryon do not treat or control Tryon's sexual deviance or his antisocial personality disorder.

C. *Dr. Mauro's Testimony*

Like Dr. Dunham and Dr. Arambula, Dr. Mauro also explained the statutory definition of "behavioral abnormality" for the jury. Based on her education, training, experience, and methodology, and contrary to the opinions expressed by Dr. Dunham and Dr. Arambula, Dr. Mauro opined that Tryon does not have a behavioral abnormality within the meaning of the Act. Dr. Mauro stated as such because Tryon is "not part of the small and extremely dangerous population that is not subject to traditional forms of mental health treatment. And this is part of the legislative findings in the law."

Dr. Mauro stated that Tryon is very ill mentally and has lower intellectual functioning. During the interview with Dr. Mauro, Tryon displayed symptoms of mania, including delusions and hallucinations. Although Tryon was cooperative, several of his responses were nonsensical. Dr. Mauro explained that there are times when Tryon's schizophrenia will dominate his actions, and other times when his bipolar disorder will be dominant.

Dr. Mauro described Tryon's institutional adjustment as relatively good, and she stated that his behavior has improved as he has aged. His masturbating onto or in front of others while institutionalized is probably a result of his mania. Tryon

reported to Dr. Mauro during the interview that he had acted in this manner in each of the two days preceding the interview.

Dr. Mauro assessed a score of twenty-four for Tryon on the psychopathy checklist; this indicates that he has mixed psychopathic traits but is not a true psychopath. When evaluated by Dr. Mauro, Tryon's score was two on the Static-99R, which is the typical score for a sex offender, and two on the Static-2002R, which is a lower score than for a typical sex offender.

Dr. Mauro testified that she believes a person with a behavioral abnormality within the meaning of the Act cannot be a person who is amenable to traditional forms of mental health treatment. Schizophrenics are amenable to such treatments. Therefore, in her opinion, because Tryon is schizophrenic, he cannot have a behavioral abnormality within the meaning of the Act, despite his classification of having a moderate risk to reoffend sexually.

D. *Tryon's Testimony*

At trial, Tryon was sixty-three years old and currently imprisoned for the felony offense of sexual assault. He stated that he has been in and out of hospitals and prisons for most of his adult life. He admitted to masturbating in the direction of female corrections officers while confined in these facilities. Tryon claimed that although he used to think about sex all the time, now he does not.

Tryon has abused substances throughout his life, including heroin, cocaine, acid, LSD, huffing gas, PCP, and marihuana. He claimed that he did not rape anyone, but rather that he was on a "trick" with a prostitute and she agreed to exchange sex for cocaine. He claimed that he was intoxicated on alcohol and drugs at the time. He was later convicted of sexual assault and sentenced to imprisonment for this offense.

Tryon testified that he had previously been imprisoned for a sexual offense before he was convicted and imprisoned for the sexual assault (rape) charge, but he

only vaguely remembers the details of that offense. He has also been convicted and imprisoned for arson.

Tryon testified that he is a diagnosed paranoid schizophrenic and that he has always taken his prescribed medications as directed.

## II. *Civil Commitment of Sexually Violent Predators*

The Act provides for the civil commitment of sexually violent predators based on legislative findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." *In re Commitment of Stratton*, 637 S.W.3d 870, 875 (Tex. App.—Eastland 2021, no pet.) (quoting HEALTH & SAFETY § 841.001).

A civil commitment proceeding under the Act incorporates the "beyond a reasonable doubt" burden of proof that is applicable to criminal cases. *Id.* (citing *In re Commitment of Fisher*, 164 S.W.3d 637, 641 (Tex. 2005)). That is, to civilly commit a person under the Act, the State must prove beyond a reasonable doubt that the person is a sexually violent predator. *Id.* (citing HEALTH & SAFETY § 841.062(a)). A person is a sexually violent predator if the person (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* (citing HEALTH & SAFETY § 841.003(a)).

The Act defines a "repeat sexually violent offender" as a person who has been "convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses." HEALTH & SAFETY § 841.003(b). The Act also defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health

8

and safety of another person." *Id.* § 841.002(2). Whether a person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence is a single, unified issue. *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012); *Stratton*, 637 S.W.3d at 876. The term "behavioral abnormality" can be more clearly defined as a "congenital or acquired predisposition, due to one's emotional or volitional capacity, to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Stratton*, 637 S.W.3d at 876 (quoting *Bohannon*, 388 S.W.3d at 303). Lastly, the Act defines "sexually violent offense" to include certain sexual offenses enumerated in the Penal Code, including sexual assault, as well as offenses with substantially similar elements under prior state law or the law of other jurisdictions. *Stoddard*, 619 S.W.3d at 669 n.1; *see* HEALTH & SAFETY § 841.002(8)(A) (listing sexual assault as a sexually violent offense); TEX. PENAL CODE ANN. § 22.011 (West Supp. 2021).

### III. *Analysis*

All of Tryon's arguments are predicated on his misinterpretation—or disapproval—of the Texas Supreme Court's decision in *Stoddard*, in which the court rejected the notion that a factual sufficiency review without consideration of the Act's application to a "small group" of "extremely dangerous" sex offenders risked "ripping [the Act] from its constitutional foundation, thus opening the door to civil commitments of sex offenders based solely on their predicate sex offenses." *Stoddard*, 619 S.W.3d at 677–78.

The United States Supreme Court has held that civil commitment statutes, like the Act, do not violate a person's due process rights under the United States Constitution if the challenged statute requires proof of at least two elements: "proof of dangerousness" and "proof of some additional factor such as a 'mental illness' or

'mental abnormality.'"  *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997); *see also Kansas v. Crane*, 534 U.S. 407, 410–14 (2002).

In *Stoddard*, the Texas Supreme Court reversed the Fort Worth Court of Appeals' construction of the Act as requiring a reference to language that exceeded the scope of the statutory definition of "sexually violent predator."  The court noted that, in anchoring its sufficiency review in the "small but extremely dangerous group" language found in the Act's legislative findings, the court of appeals had expressed it did so out of its concern that a failure to consider the Act's application to a "small group" of sex offenders "risk[ed] ripping [the Act] from its constitutional foundation, thus opening the door to civil commitments [under the Act] of sex offenders based solely on their predicate sex offenses."  *Stoddard*, 619 S.W.3d at 678.  But the court explained that this concern was unfounded because the Act

> inherently limits the scope of civil commitment to a limited subset of offenders: those who committed certain enumerated sexually violent offenses, are repeat offenders, and suffer from a behavioral abnormality that makes them likely to engage in a predatory act of sexual violence.  In other words, the Act requires evidence of both repeat past sexually violent behavior and a present condition that creates a likelihood of such conduct in the future.  A factual-sufficiency review focused on the Act's actual requirements does not threaten its constitutionality.

*Id.* (citing *Hendricks*, 521 U.S. at 358).

Tryon presents the same construction of the Act that the Texas Supreme Court rejected in *Stoddard*.  According to him, the *Stoddard* court's construction of the Act—that is, that the statutory language defining "sexually violent predator" is all the State is required to prove—decouples the two elements required by *Hendricks* and *Crane* to protect the due process rights of individuals committed under the Act.  This is so, he claims, because the statutory definition of behavioral abnormality requires only that the abnormality renders a person "likely" to reoffend or "creates

10

a likelihood of such conduct in the future."  HEALTH & SAFETY § 841.003(a)(2); *Stoddard*, 619 S.W.3d at 678.  Tryon argues that this "likely" or "likelihood" language sets too low of a bar because any person whose past conduct meets the first element of the statute, i.e., whether one is a "repeat sexually violent offender," is inevitably "likely" to reoffend and therefore automatically meets the second element, i.e., whether one has a "behavioral abnormality."  Because this effectively folds the second element into the first, Tryon concludes, the bare definitional language of the Act fails to meet the due process standards promulgated by the Supreme Court in *Crane* and *Hendricks*.

Thus, Tryon contends that, to avoid violating the due process rights of persons who have been committed under the Act, we must incorporate as interpretive guidance the language of the Act's legislative findings into the definition of "sexually violent predator."  Such a construction would clearly limit the Act's applicability to only the "small but extremely dangerous group of sexually violent predators" who have a behavioral abnormality "that is not amenable to traditional mental illness treatment modalities."  HEALTH & SAFETY § 841.001.  Therefore, according to Tryon, the Act does not apply to him because rather than being "extremely dangerous" he is merely a "dangerous" sex offender, and the sexual offenses he committed are the result of a mental illness that is treatable by medication—a traditional modality.

But Tryon misconstrues the holding in *Stoddard*.[1]  The court there explained that the Act's definitional language interweaves the two distinct characteristics that

---

[1]Tryon avers that these legislative findings provide guidance as to the meaning of the "behavioral abnormality" element, rather than that the legislative findings impose an additional element.  He cites to several examples in which courts have used legislative findings to determine the meaning of a statute, including *In re Commitment of Fisher*, in which the Texas Supreme Court relied on the Act's legislative findings to reject other constitutional challenges to the Act.  *Fisher*, 164 S.W.3d at 639–40, 646–47, 651.  This same reasoning was advanced by the court of appeals in *Stoddard* and later explicitly rejected by the supreme court.  *See Stoddard*, 619 S.W.3d at 677–78.

must exist to civilly commit a person as a sexually violent predator: he must have (1) repeatedly committed acts of sexually violent behavior in the past and (2) a present condition that creates a likelihood of committing such conduct in the future. *Stoddard*, 619 S.W.3d at 678; *see also Crane*, 534 U.S. at 410 ("[T]he statute's requirement of a 'mental abnormality' or 'personality disorder' is consistent with the requirements of . . . other statutes that we have upheld in that it narrows the class of persons eligible for confinement . . . ."). These two elements are not inexorably linked such that they must blend into each other. Moreover, although the behavioral abnormality from which a person presently suffers may have also previously afflicted him and contributed to his having repeatedly sexually offended in the past, the Act also covers circumstances in which a person's repeat past sexually violent behavior was not caused by and is not related to his present behavioral abnormality. *See* HEALTH & SAFETY § 841.002(2) ("'Behavioral abnormality' means a congenital *or acquired* condition . . . .").

As we have said, each of Tryon's issues are predicated on his misinterpretation—or disapproval—of the holding in *Stoddard*. His arguments are essentially categorized as either (1) the "behavioral abnormality" element must be construed as incorporating the Act's legislative findings and legislative history—which, he insists, would render the evidence against him legally and factually insufficient—or (2) the Act is unconstitutional. But *Stoddard* has clearly foreclosed these arguments and interpretation, and we are bound to follow the supreme court's precedent. With this in mind, we turn to Tryon's sufficiency challenges.

A. *Tryon Fails to Challenge the Sufficiency of the Evidence*

The State asserts that Tryon does not challenge the legal or factual sufficiency of the evidence to meet the statutory definitions of "sexually violent predator," "repeat sexually violent offender," or "behavioral abnormality" and the jury's findings on those elements. Because these were the only elements or definitions that

12

the State was required to prove, the State contends that Tryon's sufficiency issues should be overruled, as he attacks and focuses only on matters that were not required to be established. We agree.[2]

There is no indication in the record that the trial court's charge included any mention of or reference to the legislative-findings language emphasized by Tryon, such as "small group," "extremely dangerous," or "traditional treatment modalities." *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003) (holding that, to obtain a clear understanding of the pertinent evidence, the starting point of a sufficiency review is the trial court's charge and accompanying instructions). Here, Tryon did not request that the above language be included in the charge. Further, the jury was not asked to answer any question, because none were submitted in the charge, that pertained to any of those phrases. The record shows that only the proper statutory definitions were submitted in the charge, and the jury, after considering those definitions and the evidence presented, returned a verdict that Tryon is a sexually violent predator. Because Tryon does not contest that the evidence was insufficient to support the jury's "behavioral abnormality" finding based on the submitted statutory definitions, he does not present a sufficiency challenge for our review.

B. *The Evidence is Legally Sufficient*

Even assuming that Tryon has properly presented a legal sufficiency challenge for our review, we hold that the evidence is legally sufficient to support the jury's verdict that Tryon suffers from a behavioral abnormality.

---

[2]Although Tryon argues in a footnote in his reply brief that he *does* challenge the sufficiency of the evidence to support the jury's verdict, he explicitly reaffirms that he challenges its sufficiency "to meet the legislatively intended statutory definitions of 'behavioral abnormality' as that term should be construed according to well-settled rules of statutory construction (which should include an examination of Chapter 841's legislative history and its legislative findings)." In other words, Tryon's challenge is only that the evidence does not meet his preferred construction of the statute.

13

Tryon contends that the evidence is legally insufficient to support the jury's finding that he has a behavioral abnormality within the meaning of the Act because the evidence does not establish that he is an "extremely dangerous" sex offender, which, he asserts, is the only category of sex offender to which the Act applies. We disagree. As we have discussed, Tryon's contention is predicated on an interpretation of the Act that has been rejected by the Texas Supreme Court. The *Stoddard* court explicitly held that the Act's legislative findings are "not part of the statute's definition of 'sexually violent predator'" and are therefore not an element that the jury is required to consider or find. *Stoddard*, 619 S.W.3d at 677–78.

"A commitment proceeding under the SVP Act is the unusual civil case incorporating the 'beyond a reasonable doubt' burden of proof [standard] typically reserved for criminal cases." *Stoddard*, 619 S.W.3d at 674 (citing *Fisher*, 164 S.W.3d at 639–41). The Texas Supreme Court observed in *Stoddard* that "[t]he legal-sufficiency standard in criminal cases is consistent with the civil standard." *Id.* at 675 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Thus, when conducting a legal sufficiency review in a case governed by the Act, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could find the elements required for commitment under the Act, beyond a reasonable doubt. *Id.* Under this standard, "[i]t is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." *In re Commitment of Cordova*, 618 S.W.3d 904, 915 (Tex. App.—El Paso 2021, no pet.) (citing *In re Commitment of Williams*, 539 S.W.3d 429, 437 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

The State presented testimony by two experts (Dr. Dunham and Dr. Arambula), each of whom opined that Tryon suffers from a behavioral abnormality within the meaning of the Act. On the other hand, Tryon presented testimony from one expert (Dr. Mauro) who opined that he did not suffer from a

behavioral abnormality. According to Dr. Mauro, Tryon does not have a behavioral abnormality within the meaning of the Act because his schizophrenia is amendable to traditional treatment modalities.

Although the experts, as expected, presented conflicting testimony concerning whether Tryon has a behavioral abnormality within the meaning of the Act, the jury as the factfinder is solely responsible for fairly resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Stoddard*, 619 S.W.3d at 674; *Williams*, 539 S.W.3d at 437. We have reviewed the evidence in the light most favorable to the verdict, and we hold that the jury could have found beyond a reasonable doubt that Tryon suffers from a behavioral abnormality within the meaning of the Act. Accordingly, we overrule Tryon's first issue.

C. *The Evidence is Factually Sufficient*

Like our legal sufficiency determination, even assuming that Tryon has properly presented a factual sufficiency challenge for our review, we hold that the evidence is factually sufficient to support the jury's verdict that Tryon suffers from a behavioral abnormality.

In cases under the Act, the evidentiary standard of review for factual sufficiency differs from the evaluation for legal sufficiency. As in a legal sufficiency analysis, the assumption remains that the finder of fact resolved disputed evidence in favor of its finding if a reasonable finder of fact could do so. *Stoddard*, 619 S.W.3d at 674. However, in a factual sufficiency analysis, disputed evidence that a reasonable finder of fact could *not* have credited in favor of the finding is treated differently. *Id.* at 676. Therefore, in a factual sufficiency review, we must determine whether, in light of the entire record, the disputed evidence that a reasonable factfinder could *not* have credited in favor of the verdict, along with undisputed facts that do not support and are contrary to the verdict, is so significant that the factfinder

15

could not have found beyond a reasonable doubt that the statutory elements were satisfied. *Id.* at 678. A reviewing court's mere disagreement with the factfinder's verdict "as to the proper evidentiary weight and credibility cannot be the basis of a reversal on factual-sufficiency grounds." *Id.* at 677.

The disputed evidence in this case concerns the conflicting expert opinions expressed by Dr. Dunham, Dr. Arambula, and Dr. Mauro of whether Tryon suffered from a behavioral abnormality. We do not assign evidentiary weight or credibility to the testimony of either expert; we defer to the jury on that basis. *Id.* Rather, we must evaluate the entire record to determine (1) what disputed evidence, if any, the jury could not credit in favor of the verdict and (2) whether, along with the undisputed facts that are contrary to the verdict, the disputed evidence is so significant that the factfinder could not have concluded that the Act's requirements were satisfied beyond a reasonable doubt. *Id.* at 678. Here, Tryon asserts that his schizophrenia, if treated with proper medications, is an undisputed fact that is contrary to the jury's verdict. But the Act does not make exceptions for schizophrenia or any other mental illness on this basis. *See Williams*, 539 S.W.3d at 438. The State concedes that Tryon's advanced age is an undisputed fact that is contrary to the jury's verdict. Nevertheless, this undisputed fact, standing alone, is not enough to require a reversal of the jury's verdict. Further, Dr. Dunham explained that, in this case, Tryon's advanced age is not a protective factor.

We have reviewed the entire record in accordance with the applicable standard of review. In doing so, we hold that Dr. Mauro's opinion (the disputed evidence), combined with Tryon's advanced age (the undisputed fact contrary to the verdict), is not so significant that the jury could not have found beyond a reasonable doubt that Tryon suffers from a behavioral abnormality. Accordingly, we overrule Tryon's second issue.

D. *Chapter 841 (the Act) is Constitutional*

In his third issue, Tryon presents both a facial and as-applied challenge to the constitutionality of the Act. As the corollary to his sufficiency theories, Tryon essentially contends that, if we reject his interpretation of the statute (as we must), the Act is necessarily unconstitutional. For reasons already discussed, we disagree.

We have reviewed the record and have found no indication that Tryon preserved either of his constitutional challenges for our review. *See Fisher*, 164 S.W.3d at 654–55; *see also* TEX. R. APP. P. 33.1. Absent a recognized exception, even constitutional challenges are waived if not presented to the trial court. *See Fisher*, 164 S.W. 3d at 654, 656; *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (applying Rule 33.1 to a facial due process challenge). Nevertheless, even if Tryon need not have preserved this issue for our review, his challenges still fail. *See Fisher*, 164 S.W.3d at 654–55 & n.15.

When reviewing the constitutionality of a statute, we presume that the statute is valid, and that the legislature was neither unreasonable nor arbitrary in enacting it. TEX. GOV'T CODE ANN. § 311.021 (West 2013); *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 701 (Tex. 2014). A facial challenge asserts that a statute, by its terms, always operates unconstitutionally. *Tenet Hosps. Ltd.*, 445 S.W.3d at 702 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). An as-applied challenge asserts that a statute, while generally constitutional, operates unconstitutionally as to the specific claimant who raises the issue because of his particular circumstances. *Id.* (citing *City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 240 (Tex. 2001)).

To prevail on his facial constitutional challenge, Tryon bears the heavy burden of showing that the Act is unconstitutional in every possible application. *Fisher*, 164 S.W.3d at 655 (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494–95 (1982)). As noted above, Tryon contends that the Act's

"behavioral abnormality" element violates the due process rights of all persons who are committed under the Act. According to Tryon, the Act violates due process because the challenged statutory language does not sufficiently limit the applicability of the Act. *See* HEALTH & SAFETY § 841.003(a)(2); *Stoddard*, 619 S.W.3d at 678. But, and as we have discussed, Tryon's preferred construction of the Act has been clearly rejected by the Texas Supreme Court. *See Stoddard*, 619 S.W.3d at 677–78.

Tryon raises the same concern in his as-applied challenge; he reiterates that if "behavioral abnormality" means simply that a person is "likely" or has some "likelihood" to offend, as the Texas Supreme Court has held, the Act is unconstitutional, both facially and as applied to his case. Because the court in *Stoddard* rejected the very arguments and challenges that Tryon raises here, so do we. Accordingly, we overrule Tryon's third issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

August 25, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.